O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CHERYL E. ROSE,<br><br>          Plaintiff,<br><br>          v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>          Defendant. | Case No. SA CV 16-00173-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Cheryl E. Rose ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her application for Social Security Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is reversed and this matter is remanded for an award of benefits.

///

///

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

On August 23, 2010, Plaintiff filed an application for DIB, alleging that she had been disabled since April 30, 2006. Administrative Record ("AR") 81-82, 134-35. After her application was denied, she requested a hearing before an Administrative Law Judge ("ALJ"). AR 97. A hearing was held on July 30, 2012, at which Plaintiff, who was represented by counsel, testified, as did a medical expert ("ME"), Dr. Samuel Landau, and a vocational expert ("VE"). AR 35-70. In a written decision issued August 20, 2012, the ALJ denied Plaintiff's claim for benefits. AR 12-34. Plaintiff requested review of the ALJ's decision. AR 11. On December 18, 2013, the Appeals Council denied review. AR 5-10.

Plaintiff appealed, and on August 11, 2014, this Court reversed the Commissioner's decision and remanded the case for further proceedings, finding among other things that the ALJ had failed to provide a legally sufficient reason for rejecting the opinions of Plaintiff's treating rheumatologists, Drs. Anthony Bohan and Joan Campagna. AR 624-33. On October 24, 2014, the Appeals Council vacated the August 20, 2012 ALJ decision and remanded the case to the ALJ for further proceedings consistent with the Court's order. AR 637-39. The ALJ held a new hearing on October 7, 2015, at which Plaintiff, who was represented by counsel, testified, as did Dr. Bohan and a VE. AR 555-86.

On December 1, 2015, the ALJ issued a new decision, again denying Plaintiff's claim for benefits. AR 528-53. The ALJ found that Plaintiff last met the insured status of the Social Security Act on December 31, 2010, and that through that date, Plaintiff had the following severe impairments: "fibromyalgia; bilateral carpal tunnel; degenerative disc disease of the cervical spine; headaches; early peripheral neuropathy; inflammatory polyarthritis

(mostly in hands and knees), osteoarthritis, anxiety disorder; and depression." AR 533-34. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listing in the Listing of Impairments ("Listing") set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 534-36. The ALJ found that Plaintiff maintained the residual functional capacity ("RFC") to perform a "range of light work" as follows:

> she could stand and walk for two hours of an eight-hour workday; she could sit without limitation except with normal breaks such as every two hours; she could lift and/or carry 20 pounds occasionally and 10 pounds frequently; she could occasionally stoop and bend; she could climb stairs but she could not climb ladders, work at heights or balance; she must avoid forceful gripping, grasping, or twisting, but she could do frequent fine manipulation such as keyboarding and frequent gross manipulation such as opening drawers and carrying files; she could do occasional neck motions, but must avoid extreme motions of the head such as looking over her shoulder; she could not operate heavy equipment and motorized vehicles; she could not work around unprotected machinery or work where the safety of others could be compromised; she could not work at unprotected heights; [Plaintiff] is limited to work of no more than [a Specific Vocational Preparation ("SVP")] of 5[2]; she could not

---

[2] SVP is "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles ("DOT") App. C, 1991 WL 688702. A job with an SVP of 5 requires "[o]ver 6 months up to and including 1 year" of such training. Id.

3

| | |
|---|---|
| 1 | perform fast-paced work such as assembly line work; and she |
| 2 | could not perform inherently stressful jobs such as taking |
| 3 | complaints or working as an EMT (Emergency Medical |
| 4 | Technician). |

AR 536-37. In so finding, the ALJ again rejected Drs. Bohan's and Campagna's opinions. AR 540-41. Based on the VE's testimony, the ALJ found that through the date last insured, Plaintiff could perform jobs existing in significant numbers in the national economy. AR 544-45. As such, she concluded that Plaintiff was not disabled. AR 545.

In a notice accompanying her decision, the ALJ informed Plaintiff that she could file written exceptions to the decision with the Appeals Council or, once the ALJ's decision became final in 60 days, she could file a new civil action in the federal district court. AR 528-59. On February 2, 2016, Plaintiff filed a complaint in this Court. Dkt. 1.

## II.
## DISCUSSION

Plaintiff argues that the ALJ erred in (1) discounting the opinion of her treating rheumatologist, Dr. Bohan, and (2) finding that she did not meet the criteria of Listing 14.09B. Joint Stipulation ("JS") at 5. For the reasons discussed below, the Court finds that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Bohan's opinion. Because the Court further finds that Dr. Bohan's opinion should be credited as true and this case should be remanded for payment of benefits, it does not reach the parties' second contested issue.

**A.     The ALJ Erred in Rejecting Dr. Bohan's Opinion**

    **1.     Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the

4

plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c)³; Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."

---

³ Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 15-05925, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); cf. Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010, 2001 WL 1453802, at *58011 (Nov. 19, 2001) ("With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."). Accordingly, citations to 20 C.F.R. § 404.1527 are to the version in effect from August 24, 2012 to March 26, 2017.

Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. § 404.1527(c).

    **2.    Relevant Facts**

        a.    Dr. Landau's Opinion

At the first ALJ hearing, on July 30, 2012, Dr. Landau summarized Plaintiff's medical records and stated that her medically determinable impairments consisted of "chronic pain, blamed on fibromyalgia syndrome"; bilateral carpal tunnel syndrome; "degenerative disk disease of the neck, consistent with her age"; headaches; "possibly very early peripheral neuropathy"; and "psychiatric diagnoses." AR 44. He opined that those impairments did not meet or equal a Listing, stating that he had considered Listings 1.02, 1.04, 14.09, and 11.14. AR 49.

Dr. Landau opined that Plaintiff retained the RFC to stand and walk 2 hours out of 8; sit for an unlimited amount of time with normal breaks; lift and carry 10 pounds frequently and 20 pounds occasionally; stoop and bend occasionally; climb stairs; perform frequent fine manipulation, such as keyboarding; and perform frequent gross manipulation, such as opening drawers and carrying files. AR 50. She was precluded from climbing ladders; "work[ing] at heights or balance"; performing "forceful gripping, grasping or twisting"; operating heavy equipment or motorized vehicles; working around "unprotected machinery"; or working "where the safety of others could be compromised. Id. She could occasionally move her neck but "should avoid extremes of motion" and her "head should be held in a comfortable position at other times." Id. Plaintiff could occasionally "maintain a fixed head position for 15 to 30 minutes at a time." Id. Dr. Landau believed that these functional

6

limitations had existed on Plaintiff's alleged onset date and that they had continued through the present. AR 50. When Plaintiff's counsel asked why he disagreed with Plaintiff's treating rheumatologists' diagnosis of inflammatory arthritis, Dr. Landau replied that the diagnosis "isn't really documented because it's a description that doesn't occur in many places" and their diagnosis was "irrational because if they're diagnosing fibromyalgia syndrome, then there is no other diagnosis." AR 51.

    b. Dr. Bohan's Opinions

Dr. Bohan was a licensed physician and attorney who was board certified in internal medicine and rheumatology. AR 466-67, 566. He began treating Plaintiff in April 2010. AR 566.

On May 2, 2012, Dr. Bohan completed a Physical Capacities Evaluation form, opining that Plaintiff could sit for up to 25 minutes at a time for a total of 3 hours in an 8-hour day; stand for 15 minutes at a time for a total of 1 hour in an 8-hour day; and walk for up to 25 minutes at a time for a total of 1 hour in an 8-hour day. AR 487. Plaintiff needed to rest for 40 minutes at a time for a total of 3 hours in an 8-hour day. Id. She could occasionally lift and carry up to 8 pounds. Id. Plaintiff could not use her hands for repetitive actions such as simple grasping, pushing and pulling of arm controls, or fine manipulation, and she could not use her feet for repetitive movements such as pushing or pulling of leg controls. Id. She could occasionally bend, crawl, climb with use of a railing, and reach. Id. Plaintiff was unable to squat or perform activities involving unprotected heights, moving machinery, or exposure to marked changes in temperature and humidity, dust, fumes, or gasses. Id. She had a "moderate" restriction on driving. Id. Dr. Bohan noted that Plaintiff "has inflammatory arthritis & fatigue, osteoarthritis & fibromyalgia." Id.

On October 7, 2015, Dr. Bohan testified at the second ALJ hearing. AR 565. He reported that he saw Plaintiff every one to three months and he

7

typically treated her with an anti-inflammatory medication, gabapentin,[4] and analgesic medication. AR 566. Dr. Bohan testified that when he saw Plaintiff, he would take her interim history, review her medications, review any side effects of those medications, and depending on the circumstances, discuss other treatment options. AR 567. He would also periodically order laboratory testing to be sure that her medications were not causing adverse reactions. Id.

Dr. Bohan testified that Plaintiff had inflammatory polyarthritis, primarily in her hands and knees; degenerative osteoarthritis and degenerative disc disease of the cervical spine, verified by MRI; and fibromyalgia. AR 567-68. Plaintiff did not have rheumatoid arthritis. AR 567. Dr. Bohan testified that a person could have both fibromyalgia and inflammatory arthritis because they are "two separate conditions" with "separate clinical findings." AR 570. Dr. Bohan testified that fibromyalgia "typically affects . . . the soft tissues, the muscles, . . . tendons, [and] ligaments" whereas "inflammatory arthritis affects the joints." AR 571. Dr. Bohan testified that he had mostly seen Plaintiff's inflammatory arthritis in Plaintiff's hands and knees, and that the "symptoms and findings and the signs" of that condition and fibromyalgia "vary . . . from time to time." AR 572.

Dr. Bohan opined that Plaintiff's symptoms matched those in Listing 14.09B, and based on his review of Dr. Campagna's notes, he believed that Plaintiff had met that Listing before her date last insured, in December 2010.

---

[4] Gabapentin is an anticonvulsant that is used to prevent and control seizures and is also used to relieve nerve pain following shingles. Gabapentin, WebMD, http://www.webmd.com/drugs/2/drug-14208-8217/gabapentin-oral/gabapentin-oral/details (last accessed June 12, 2017). It is also prescribed to treat chronic neuropathic pain or fibromyalgia. Gabapentin for chronic neuropathic pain and fibromyalgia in adults, PubMed Health, https://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0014677/ (last updated Mar. 17, 2014).

8

AR 573-74. Dr. Bohan reaffirmed his RFC findings as set forth in his May 2012 report. AR 576-77.

### 3. Discussion

In the December 2015 decision, the ALJ gave "greatest weight" to and "adopt[ed]" Dr. Landau's opinion. AR 539, 541. The ALJ accorded "minimal weight" to Dr. Bohan's functional assessment. AR 540. For the reasons discussed below, the ALJ failed to provide specific and legitimate reasons for discounting Dr. Bohan's controverted opinion.

First, the ALJ erred in discounting Dr. Bohan's assessment as "inconsistent with the objective evidence." AR 540. Dr. Bohan testified that Plaintiff's limitations stemmed from her degenerative osteoarthritis and disc disease of the cervical spine; inflammatory arthritis, primarily in her hands and knees; and fibromyalgia. AR 567-72. Regarding Plaintiff's cervical-spine condition, an October 2007 cervical-spine MRI showed a 1 to 2 millimeter disc bulge and osteophyte with minimal neural foramen encroachment at C4-C5; a 2 millimeter disc bulge and osteophyte with mild neural foramen encroachment at C5-C6; and a 1 to 2 millimeter disc bulge without stenosis at C6-C7. AR 373. And an August 2011 cervical-spine MRI showed mild degenerative disc disease at C5-C6 and C7-T1; a 2 millimeter osteophyte at C2-C3 with partial effacement of the ventral thecal sac; a 2 millimeter osteophye at C5-C6 with mild central canal stenosis and moderate neural foraminal stenosis, worse on the right; and a 2 millimeter posterior disc bulge at C6-C7. AR 410. And Dr. Landau, whose opinion the ALJ credited, found several limitations apparently stemming from Plaintiff's cervical-spine condition, including a limitation to only occasional neck motion, a prohibition on extremes of motion of the neck, and a requirement that her head remain in a "comfortable position" for most of the day. AR 50. Regarding Plaintiff's inflammatory arthritis of the hands and knees, Dr. Campagna noted that

Plaintiff had pain and swelling of the wrists, fingers, right shoulder, ankles, and knees, see AR 406, 443, and Dr. Bohan noted joint swelling and tenderness of several joints of the hands, AR 258-59, 261, 401. And although Plaintiff was not always found to have joint swelling, see, e.g., AR 333-34 (examining orthopedist Robert MacArthur's opinion),[5] at the hearing, Dr. Bohan testified that the symptoms of inflammatory arthritis "vary . . . from time to time." AR 572. The objective evidence therefore supports Dr. Bohan's findings to the extent they are based on Plaintiff's cervical-spine condition and inflammatory arthritis.

Regarding Plaintiff's fibromyalgia—which Dr. Bohan noted was Plaintiff's "chief complaint and principal diagnosis," AR 422—Dr. Bohan noted positive trigger points, muscle pain, insomnia, fatigue, memory impairment, numbness and tingling, dizziness, and other symptoms, AR 259, 261, 264-65, 416-17, and Dr. Campagna similarly noted Plaintiff's "severe pain," "physical weakness," fatigue, AR 295-96, and positive trigger points, 318, 406-07. All of those symptoms are indicative of fibromyalgia. See SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012)[6]; Benecke v. Barnhart, 379 F.3d

---

[5] Dr. MacArthur examined Plaintiff and noted mostly normal findings; he concluded that she had no functional limitations. AR 331-35. But Dr. MacArthur specifically recommended "referral to internal medicine subcategory rheumatology for diagnostic evaluation as [Plaintiff] is out of my area of expertise." AR 335. The ALJ accorded "little weight" to Dr. MacArthur's opinion. AR 539.

[6] SSR 12-2p states that an ALJ can find that a person has fibromyalgia if she meets one of two sets of criteria. 2012 WL 3104869, at *1-3. Under the first, she must show evidence of (1) "[a] history of widespread pain," (2) "[a]t least 11 positive tender points on physical examination," and (3) "evidence that other disorders that could cause the symptoms or signs were excluded." Id. at *2-3. Under the second set of criteria, a claimant must show evidence of (1) "[a] history of widespread pain"; (2) repeated manifestations of six or more

10

587, 589-90 (9th Cir. 2004) (explaining that common symptoms of fibromyalgia "include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease"). Moreover, there are no laboratory tests or objective findings that confirm the presence or severity of fibromyalgia. Benecke, 379 F.3d at 590; Belanger v. Berryhill, __ F. App'x __, 2017 WL 1164401, at *1 (9th Cir. Mar. 29, 2017). Indeed, "[o]ne of the most striking aspects of this disease is the absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." Rollins v. Massanari, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting); see also Cota v. Comm'r of Soc. Sec., No. 08-00842, 2009 WL 900315, at *9 (E.D. Cal. Mar. 31, 2009) ("Joints in fibromyalgia patients appear normal; musculoskeletal examinations generally indicate no objective joint swelling or abnormality in muscle strength, sensory functions, or reflexes."). As a result, a treating doctor's fibromyalgia diagnosis may be based purely on a patient's reports of pain and other symptoms. Benecke, 379 F.3d at 590; see also Belanger, 2017 WL 1164401, at *1. Any lack of abnormal objective findings therefore was not a sufficient basis for rejecting Dr. Bohan's opinions regarding the severity of Plaintiff's fibromyalgia. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ erred by relying upon "his own exploration and assessment" of

---

fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. Id. at *3. The relevant "symptoms and signs" include, among other things, muscle pain, fatigue, problems thinking or remembering, muscle weakness, headache, numbness or tingling, dizziness, insomnia, depression, and nervousness. Id. at *3 n.9.

plaintiff's medical condition rather than medical evidence in the record).[7]

The ALJ also erred in rejecting Dr. Bohan's reports as inconsistent with Plaintiff's "activities of daily living that included caring for a young child and several pets with minimal assistance." AR 540. The ALJ ignored Plaintiff's statements regarding her limitations in performing those activities. For example, in a May 2011 function report, Plaintiff stated that she rested "50% of the day or more" and that her "[a]ctivities are done piecemeal 10-15 minutes at a time, interrupted with a need to rest due to severe pain and severe fatigue." AR 189. She made frozen dinners or soup for her daughter, which took 5 to 10 minutes to prepare. AR 191. Plaintiff did laundry "as [she was] able" and "light dusting with help." Id. She could not vacuum, iron, or do yard work or home repairs. Id. She shopped in stores for groceries one to two times a week for "limited items." AR 192; see also AR 176 (Oct. 2010 function report stating that Plaintiff shopped in stores for 15 minutes twice a week).

At the July 30, 2012 hearing, Plaintiff testified that she made her daughter's lunch and walked her to school, which was three houses away, up a 20-step staircase, and across a field. AR 52-53. Once at school, Plaintiff would sit and rest for about 10 minutes before going home. AR 52-53, 57. Plaintiff rested by lying down during the day, and she would lie down to talk on the phone or read the mail. AR 53. She cleaned up after her three dogs and three

---

[7] The ALJ also found that the evidence "revealed little objective evidence of neurological deficits or musculoskeletal weakness that would render [Plaintiff] sedentary and reduce her to only occasionally reaching." AR 541. But a nerve-conduction study in March 2010 was abnormal, showing moderately severe carpal tunnel syndrome on the right and mild carpal tunnel on the left, AR 253-55, and some of Plaintiff's doctors noted decreased sensation and absent reflexes, AR 253, 317, 334, 460. And in any event, most of Plaintiff's symptoms appear to have been attributable to her fibromyalgia, which as discussed above, is often unaccompanied by such objective findings.

12

cats and fed and watered them. Id. Plaintiff picked her daughter up from school at 3 p.m. Id. Plaintiff sometimes read, but she sometimes needed to reread the same paragraph over and over. AR 55. Plaintiff wrote letters on the computer and helped her daughter with homework if she needed it. Id. Plaintiff watched movies on television. AR 56. When she went grocery shopping, she could not walk or stand in one place very long and she would have to "squat after a few minutes to get stress off [her] back and neck." AR 57. Those limited activities appear to be consistent with Dr. Bohan's opinion that Plaintiff was limited to, for example, lifting only 8 pounds; sitting for up to 25 minutes at a time for a total of 3 hours in an 8-hour day; standing for 15 minutes at a time for a total of 1 hour in an 8-hour day; and walking for up to 25 minutes at a time for a total of 1 hour in an 8-hour day. See AR 487; Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (finding that ALJ erred in rejecting medical opinions when "a holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [plaintiff's] daily activities").

The ALJ also discounted Dr. Bohan's opinion because Plaintiff was treated conservatively with oral pain medications and did not require "invasive treatment or surgical intervention for any of her musculoskeletal conditions." AR 540; see Hanes v. Colvin, 651 F. App'x 703, 705 (9th Cir. 2016) (finding that ALJ permissibly discounted treating physicians' opinions based in part on plaintiff's conservative treatment). But Dr. Bohan's treatment notes show that Plaintiff's medications failed to control her fibromyalgia and inflammatory-arthritis symptoms, and that he often increased her dosages or added new medications in an effort to alleviate her pain. In April 2010, Dr. Bohan noted that Plaintiff took gabapentin and Cymbalta,[8] AR 258; and in May, he noted

---

[8] Cymbalta, or duloxetine, is a selective serotonin and norepinephrine

13

that Plaintiff was unable to take a higher dose of Cymbalta because of side effects but she was taking gabapentin "several times daily" and required one to two tabs of Vicodin[9] a day, AR 259. In June 2010, Dr. Bohan noted that Plaintiff was taking Cymbalta, gabapentin, and Vicodin; the Vicodin helped her pain temporarily but did not "take it away" and she was trying to keep her dosage at a "low level." AR 259. In July 2010, Dr. Bohan prescribed an additional medication, the nonsteroidal anti-inflammatory drug Mobic, "for pain and inflammation." AR 261. In August 2010, Dr. Bohan noted that Plaintiff continued to have musculoskeletal pain and stiffness, fatigue, weakness, and other symptoms, and he advised her to continue her medications. AR 265. In September 2010, Dr. Bohan noted Plaintiff's continuing symptoms and increased her dosage of Cymbalta. AR 264. About a year later, in October 2011, Dr. Bohan noted that Plaintiff was taking up to four tabs of Vicodin a day in addition to Mobic, Cymbalta, and gabapentin. AR 421.[10]

---

reuptake inhibitor that is used to treat depression, generalized anxiety disorder, pain and tingling caused by diabetic neuropathy, and fibromyalgia. Duloxetine, MedlinePlus, https://medlineplus.gov/druginfo/meds/a604030.html (last updated May 15, 2016).

[9] Vicodin is a combination of hydrocodone, a narcotic analgesic, and acetaminophen. Hydrocodone Combination Products, MedlinePlus, https://medlineplus.gov/druginfo/meds/a601006.html (last updated Jan. 15, 2017).

[10] The evidence also shows that at some point, Plaintiff may have declined carpal tunnel surgery, and perhaps cervical-spine surgery, out of fear. See AR 434-35 (Oct. 2007, neurologist stating that Plaintiff needed to undergo nerve-conduction study and EMG and may require carpal tunnel release surgery if she had moderate impingement), 253 (Mar. 2010, neurologist stating that nerve-conduction study showed carpal tunnel syndrome, moderately severe on right and mild on left), 511 (July 2012, neurologist noting that

And in any event, the ALJ failed to describe the type of treatment Plaintiff should have sought for her main complaint, fibromyalgia, which is a disease for which there is no known cause or cure. See Benecke, 379 F.3d at 590 (noting that fibromyalgia has no known cause or cure); Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) ("A claimant cannot be discredited for failing to pursue nonconservative treatment options where none exist."); cf. Corless v. Comm'r of Soc. Sec. Admin., No. 16-00426, 2017 WL 2199156, at *3 (D. Ariz. May 19, 2017) (finding that ALJ erred in discounting plaintiff's credibility based on conservative treatment when "the ALJ failed to describe the type of treatment [p]laintiff purportedly should have sought for her fibromyalgia, a disease for which there is no known cause or cure"). As such, the ALJ erred in relying on this factor to discount Dr. Bohan's opinion.

The ALJ also noted that Dr. Bohan "apparently relied quite heavily on [Plaintiff's] subjective report of symptoms and limitations." AR 541. But as previously discussed, Plaintiff's MRIs and the doctors' findings of swelling and tenderness supported Plaintiff's diagnoses of a cervical-spine condition and inflammatory arthritis. Moreover, the Ninth Circuit has recognized that "fibromyalgia's 'symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.'" Belanger, 2017 WL 1164401 at *1 (quoting Rollins, 261 F.3d at 855). Thus, "[i]n the context of a disease that is diagnosed primarily through subjective self-reports, the fact that

---

"[w]rist splints and anti-inflammatory medications have not provided adequate relief, so I have suggested that consideration be given to carpal tunnel release surgery, although the patient is very frightened of that prospect because of her other medical illnesses"), 513 (July 2012, neurologist noting that Plaintiff had "been cautioned about the risks of cervical spine surgery and carpal tunnel release surgery" and "states that she really wants to avoid any surgery but her right upper extremity is getting so bad that she is beginning to consider surgical options").

a treating physician relied on subjective complaints is not itself a valid basis to reject the physician's opinion." Id.[11]

Finally, the ALJ discredited Dr. Bohan's opinion because he had a "brief treatment period" of 8 months. AR 541. But Dr. Bohan treated Plaintiff seven times in the 8-month period between when he first saw her, in April 2010, and her date last insured, in December 2010, see AR 258-59, 261, 264-65, 392, and he continued to treat her thereafter, see, e.g. AR 414-17, 421-22, 463-64. Thus, it appears that Dr. Bohan in fact saw Plaintiff "a number of times and long enough to have obtained a longitudinal picture of [her] impairment." See § 404.1527(c)(2)(i). And the ALJ's reliance on Dr. Bohan's 8-month treatment history to discredit his opinion is particularly suspect given that she fully credited the opinion of Dr. Landau, who never examined Plaintiff. See Coe v. Colvin, No. 16-00238, 2016 WL 6768908, at *3 (C.D. Cal. Nov. 15, 2016) (finding that ALJ erred in rejecting treating psychologist's opinion based on limited treatment history when ALJ did "not explain why four visits was a basis to discredit [the treating psychologist's opinion], while only one visit allowed a portion of [the examining physician's] assessment to be given great weight"). As such, this is not a specific and legitimate reason for rejecting Dr. Bohan's opinion.[12]

---

[11] The Ninth Circuit has recognized that an ALJ can reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible. See Belanger, 2017 WL 1164401 at *1 n.1. But here, the ALJ discredited Plaintiff's subjective account of her symptoms based largely on her allegedly conservative treatment and robust daily activities. See AR 538. As previously discussed, however, it is not clear what other treatment was available for Plaintiff's fibromyalgia, and her reported daily activities were in fact much more limited than the ALJ acknowledged.

[12] The Commissioner argues that the ALJ properly discounted Dr.

16

Because the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Bohan's opinion, remand is warranted.

**B.     Remand for Award of Benefits Is Warranted**

Plaintiff argues that Dr. Bohan's opinion should be credited as true and this case should be remanded for award of benefits. JS at 50. The Court agrees.

   **1.     Applicable Law**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citations omitted).

Where, as here, a plaintiff contends that she is entitled to an award of benefits because of an ALJ's failure to properly consider medical-opinion evidence, the Court applies a three-step framework for applying the credit-as-

---

Bohan's opinion because the record shows no evidence of muscle atrophy. JS at 25-26. But nothing indicates that the limitations set forth in Dr. Bohan's opinion—which included 1 hour each of standing and walking—are so extreme as to result in muscle atrophy. See Lapeirre-Gutt, 382 F. App'x at 665 (finding that "no medical evidence suggests that high inactivity levels necessarily lead to muscle atrophy"). And in any event, the ALJ did not rely on any lack of muscle atrophy when discrediting Dr. Bohan's findings. The Court therefore cannot rely on this factor to affirm the ALJ's decision. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (finding that courts are "constrained to review the reasons the ALJ asserts" and may not affirm ALJ decision based on factors ALJ did not discuss).

17

true rule and determining whether to remand for further proceedings. See Garrison, 759 F.3d at 1020; Treichler v. Comm'r Soc. Sec., 775 F.3d 1090, 1103-04 (9th Cir. 2014).

First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting the evidence. Treichler, 775 F.3d at 1103. Second, the Court determines "whether further administrative proceedings would be useful," asking "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." Id. at 1103-04. The Court must "assess whether there are outstanding issues requiring resolution before considering whether to hold that the [evidence] is credible as a matter of law." Id. at 1105. Third, if the Court concludes that no outstanding issues remain and further proceedings would not be useful, it may find the medical evidence true as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceeding." Id. at 1101 (alteration in original) (citation omitted); see also Garrison, 775 F.3d at 1021 (holding that district courts retain flexibility to "remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act"). Only when all three elements are satisfied does a case raise the "rare circumstances" that allow the Court to exercise its discretion to remand for an award of benefits. Treichler, 775 F.3d at 1101.

**2. Discussion**

Plaintiff has satisfied all three conditions. As discussed above, the ALJ failed to provide sufficient reasons supported by substantial evidence for discounting Dr. Bohan's opinion. Accordingly, the first element of the Garrison/Treichler framework has been met.

As to the second element, the administrative record is detailed and complete and further administrative proceedings would not be useful. The record includes hundreds of pages of medical records dating from both before and after Plaintiff's date last insured, in December 2010; several medical opinions; and transcripts from two hearings that include testimony from Plaintiff, two doctors, and two VEs. "Given this fully developed record, the admission of more evidence would not be 'enlightening,' and 'remand for the purpose of allowing the ALJ to have a mulligan [does not qualify] as a remand for a 'useful purpose.'"[13] Henderson v. Berryhill, __ F. App'x __, 2017 WL 2211273, at *1 (9th Cir. May 19, 2017) (alteration in original) (citations omitted). That is particularly true given that this Court previously found that the ALJ failed to give legally sufficient reasons for rejecting Dr. Bohan's opinion and remanded the case for further proceedings. See Benecke, 379 F.3d at 595 (holding that allowing Commissioner a second chance to decide the "central" issue in plaintiff's case "'create[s] an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication" (citation omitted)).

Regarding the third and final element, if Dr. Bohan's opinion were credited as true, the ALJ would be required to find Plaintiff disabled. Dr. Bohan found among other things that Plaintiff could sit, stand, and walk for a total of only 5 hours in an 8-hour day, and that she would have to spend the remaining 3 hours resting. AR 487. One of the VEs testified that if Plaintiff needed to rest three hours in an 8-hour day, no substantially gainful

---

[13] The Commissioner argues that remand for further proceedings is warranted because "a significant amount of time has elapsed since the date of the ALJ decision, and an evaluation of the medical evidence during the interim period would be required for a finding of disability." JS at 52. But Plaintiff's date last insured was in December 2010, and the evidence relating to the period before and for several years after that date appears to be fully developed. Remand for consideration of more recent medical evidence is unwarranted.

19

employment would be available. AR 66. Accordingly, Plaintiff satisfied the requirements of the credit-as-true standard.

Plaintiff initially filed her application for DIB in 2010. Further delay of "the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary only serves to cause the applicant further damage—financial, medical, and emotional" and contradicts the goals of fairness and efficiency that the credit-as-true rule is designed to achieve. Garrison, 759 F.3d at 1019 (quoting Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1398-99 (9th Cir. 1988)). Because there is not "serious doubt" as to whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits. See Henderson, 2017 WL 2211273 at *2 (noting that Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when all of these conditions are met" (citation omitted)).

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for an award of benefits.

Dated: June 13, 2017

DOUGLAS F. McCORMICK
United States Magistrate Judge